**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

| | | |
|---|---|---|
| **JAMES HAWTHORNE,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | **CIVIL ACTION NO.:** |
| **V.** | ) | |
| | ) | **3:21-cv-1008** |
| **BREVARD ACHIEVEMENT** | ) | |
| **CENTER, INC.** | ) | **JURY DEMAND** |
| | ) | |
| **DEFENDANT.** | | |

## COMPLAINT

## I.    INTRODUCTION

This is an action brought by James Hawthorne against Brevard Achievement Center, Inc. for legal and equitable relief to redress retaliation and discrimination in violation of Title I of the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. § 12101 *et. seq*. Plaintiff alleges that Defendant discriminated against him based on his association with persons with disabilities.  Defendant also retaliated against Plaintiff for engaging in protected activity and attempted to intimidate him on account of Plaintiff's efforts in aiding persons with disabilities. Plaintiff seeks injunctive relief, equitable relief, compensatory and punitive damages, and requests a jury trial.

## II.    JURISDICTION, VENUE AND ADMINISTRATIVE
## PREREQUISITES

1.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331,

1343, 2201 and 2202.   Venue is proper in the Northern District of Florida under 28 U.S.C. § 1391(b).

2.      Plaintiff has fulfilled all conditions precedent to the institution of this action under Title I of the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. § 12101 *et. seq.*

3.      Plaintiff timely filed his charge of discrimination within 180 days of the occurrence of the last discriminatory act.   Plaintiff also timely filed his lawsuit within ninety (90) days of receipt of his Notice of Rights from the Equal Employment Opportunity Commission.

## III.   PARTIES

4.      Plaintiff, James Hawthorne, is a male, a citizen of the United States, and a resident of the State of Florida.

5.      Defendant Brevard Achievement Center, Inc. (hereinafter, "BAC") is an entity subject to suit under Title I of the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. §§ 12101 *et. seq*.

## IV.   FACTS

6.      Plaintiff, James Hawthorne, was hired by Defendant BAC on or around March 13, 2017 as a custodian at the Pensacola Commissary located at the Pensacola Naval Air Station in Florida sometimes referred to as "Corry Field."

7.     Plaintiff was hired as a full-time employee and told he would receive between 30-40 hours a week.

8.     A large percentage of the employees of Defendant employed at Corry Field have disabilities and are substantially limited in major life activities.

9.     Plaintiff was not a disabled employee.

10.     During his employment, Plaintiff observed that local management was discriminating against employees with disabilities and harassing employees with disabilities.

11.     The mistreatment included, but was not limited to, not providing such employees with breaks, not paying such employees properly, and cursing at and using profanity towards the employees with disabilities by management.

12.     Plaintiff complained about such conduct to his lead person, as well as other local supervisors.   However, no corrective action was taken, and the conduct continued.

13.     Plaintiff also complained about his hours being cut and being sent home prior to work being completed, which was in retaliation for objecting to the treatment toward the disabled employees.

14.     On July 25, 2017, Plaintiff wrote a letter to Amar Patel, President, Shirley Ebelink, Vice President Human Resources, and Keisha Green, Human

Resources.

15.    The subject of the letter was "Mistreatment of Employees/Employees with Disabilities/Retaliation for Speaking Out on the Behalf of the employees with Disabilities/Denying employees their rightful benefits by not giving them 30 minutes lunch break.   All employees of Brevard Achievement Center."

16.    In addition, there was a specific heading of the letter entitled "Mistreatment of Employees with Disabilities" and a section labeled "Mistreatment of stockers."

17.    Individuals who held the position of "stocker" were persons with "disabilities", as that term is defined under the ADA.   42 U.S.C. 12102.

18.    In his letter, Plaintiff specifically addressed mistreatment of employees with disabilities, including on pages 2, 3, and 4.   This mistreatment included cutting of hours, inappropriate discipline, cursing at employees, not providing breaks, and not paying for time worked.

19.    Plaintiff also set forth incidents in which he had been retaliated against for complaining about the mistreatment of himself and those with disabilities.

20.    The July 25, 2017 letter and Plaintiff's previous oral complaints amount to protected conduct under the ADA.

21.    Defendant's Vice President of Human Resources, Shirley Ebelink,

responded to Hawthorne's letter on August 2, 2017.

22.   In this response, the VP of Human Resources asserted that Defendant was not required to provide employees with breaks.

23.   Ebelink further informed Plaintiff that the counseling he had received was not discipline but only "Advisements."

24.   In response to the allegation that Project Manager Zambrana used profanity toward and when addressing disabled employees, Ebelink stated that she was "not present to hear the contents within the context or determine if her comments were beyond acceptable societal norms."

25.   There was no mention of an investigation into the allegations or that employees denied that Zambrana cursed disabled employees.

26.   It was not acceptable to curse disabled employees, or any other employees for that matter, and based on the response, no investigation was conducted, and no discipline issued to Zambrana.

27.   Ebelink ended her response to Plaintiff by counseling <u>him</u> for using "racial descriptors" to describe his co-worker in his letter and instructed him that the use of such is inappropriate.

28.   The use of "racial descriptors" by Plaintiff in his letter was for identification purposes and to establish that his complaint was not based on race but

on the treatment of disabled employees of all races and retaliation against himself.

29.     Defendant's response was without merit and was intimidating and threatening toward Plaintiff on account of his aiding others with disabilities.

30.     Human Resources misstated the law as to breaks and pay of disabled employees, failed to investigate the allegations of profanity to disabled employees, attempted to justify the use of profanity by the Project Manager toward the disabled employees, and counseled Plaintiff for describing employees, as Caucasian and African-American.

31.     Plaintiff replied to Ebelink's letter on August 9, 2017.

32.     In this second letter, Plaintiff pointed out that Ebelink was incorrect regarding breaks and the pay deductions and that his use of racial descriptors was to identify employees and show that race was not the issue but the treatment of disabled employees.

33.     This letter amounts to protected activity and Plaintiff again references the treatment of disabled employees.

34.     On August 16, 2017, Ebelink responded to Plaintiff.

35.     In her response, Ebelink acknowledged that Plaintiff was correct in his original complaint about breaks for the disabled employees.

36.     Ebelink again informed Plaintiff that his use of descriptors or adjectives

was inappropriate and again counseled him; however, she had not counseled or disciplined Zambrana for cursing disabled employees.

37.     This time, Ebelink also informed Plaintiff that she had received complaints about him from several co-workers.

38.     There were no such complaints prior to Plaintiff engaging in protected activity and aiding his co-workers with disabilities by calling Ebelink and Zambrana out for their inappropriate response and conduct.

39.     Defendant's response was again retaliatory, intimidating and threatening towards Plaintiff on account of his aiding co-workers with disabilities.

40.     Plaintiff again replied to Ebelink, pointing out that someone (either HR or his local management) was not being honest about the breaks and the appropriateness of Defendant's conduct to cover up for the unfair treatment of the disabled employees.

41.     Plaintiff also pointed out that local management routinely used racial descriptors and profanity toward employees, and nothing was ever said to them.

42.     Plaintiff further addressed Ebelink's remarks related to co-worker complaints and again stressed that he was standing up on behalf of others and himself.

43.     All such letters, as well as Plaintiff's oral complaints to local

management, were protected activity.

44.    On August 22, 2017, Plaintiff and other employees were provided updated/revised schedules.

45.    Once again, Hawthorne's hours had been cut.

46.    The updated/revised schedules were discussed among the employees.

47.    Later that night at around 2:10 a.m., Plaintiff's Lead Person informed him that Zambrana said he was to finish the tasks he was performing, clock out, and go home.

48.    Plaintiff objected stating that the revised scheduled he had received earlier that night had him working until 3:00 a.m. and he was not finished with all of the work that he was supposed to do.

49.    Supervisor Roche told Plaintiff that despite what his revised scheduled said and what still needed to be done, he was to clock out and go home per Zambrana's instructions.

50.    Plaintiff clocked out as instructed at or around 2:20 a.m., 10 minutes after he was first approached, and once he completed the task he was performing as instructed.

51.    On August 23, 2017, Plaintiff was called into the office and issued two disciplinary actions by Zambrana.

52.    The first disciplinary action was for not clocking out when told and the second one was for discussing his schedule with others.

53.    Zambrana informed Plaintiff that he was being suspended.

54.    Plaintiff asked how long he was being suspended, and was told, "I'll let you know."

55.    Plaintiff was instructed to work the remainder of the day and that his suspension would start on August 24, 2017.

56.    Plaintiff objected to the discipline and suspension.

57.    Plaintiff informed Zambrana that while he objected to clocking out, he finished his task as instructed and clocked out within 10 minutes of being told to do so.

58.    Plaintiff also objected to the write up regarding discussing his schedule with other employees as there is no rule against showing or discussing your schedule with co-workers and the other individuals involved in sharing and discussing their schedules that evening, or any other evening, were not disciplined.

59.    the discipline and suspension were without merit and were retaliatory, discriminatory, intimidating and threatening to Plaintiff.

60.    On August 25, 2017, Plaintiff was terminated.

61.    The write ups, suspension, and termination are pretext for

discrimination and retaliation.

62.     Plaintiff's conduct did not violate any work rules, there were no threats against Zambrana, and others who discussed their schedules were not disciplined, suspended, or terminated.

63.     Upon Plaintiff's termination, he filed a complaint with the Department of Labor.

64.     The National Labor Relations Board Region 15 found merit to Plaintiff's allegations against Respondent and brought charges against Respondent for among other things,   (1) issuing Plaintiff two written warnings in retaliation for and/or in order to discourage protected concerted activities; and (2) terminating Plaintiff in retaliation for and/or in order to discourage protected concerted activities.

65.     Plaintiff repeatedly engaged in protected activity.   The discipline, suspension, and termination amounted to adverse action and there is a casual connection between the protected activity and the adverse action.

66.     In addition, Defendant's articulated reason for its conduct is pretext for retaliation and discrimination.

67.     Plaintiff's termination was discriminatory on the basis of his association with persons with disabilities.

68.     Plaintiff was terminated in retaliation for his complaints about the

treatment of the disabled employees and was therefore retaliated against for engaging in protected activity.

69.     Employees who did not complain of discrimination were treated differently than was Plaintiff.

70.     Plaintiff has suffered emotional distress, humiliation, and embarrassment as a result of Defendant's conduct.

71.     Defendant has acted with malice and reckless disregard toward Plaintiff and his federally protected rights.

## V.     CAUSES OF ACTION

### A.     Count I - The Americans With Disabilities Act – Retaliation and Intimidation.

72.     Plaintiff re-alleges and incorporates by reference paragraphs 1-71, above with the same force and effect as if fully set out in specific detail hereinbelow.

73.     Plaintiff is not an individual with a disability, however he engaged in protected activity on behalf of individuals who have a history of disability, and/or are regarded as disabled. See 42 U.S.C. § 12102.

74.     Defendant is a covered entity and an employer in accordance with 42 U.S.C. § 12111(5).

75.     Under the ADA, Defendant is prohibited from discriminating against individuals on the basis of disability in regard to, inter alia, discipline, performance

reviews, termination, and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a).

76.    The ADA's protection against discrimination also prohibits utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability. 42 U.S.C. § 12112(b)(3)(A).

77.    Plaintiff observed Defendant discriminate against and harass Plaintiff's co-workers on the basis of their disabilities; Plaintiff opposed Defendant's disability discrimination and harassment.

78.    The ADA prohibits discrimination against any individual because such individual has opposed any act of practice made unlawful by the ADA.   42 U.S.C. 12203(a).

79.    The ADA also makes it unlawful to "coerce, intimidate, threaten, or interfere with any individual ... on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by" the ADA.   42 U.S.C. 12203(b).

80.    In its conduct against Plaintiff, including discipline, suspension and termination of Plaintiff, Defendant has maliciously, intentionally, and with reckless disregard retaliated against Plaintiff due to his protected activity on behalf of

individuals who are disabled. See 42 U.S.C. § 12203.

81.    Defendant's adverse actions against Plaintiff were in retaliation for Plaintiff's protected activity on behalf of his disabled co-workers and were taken in order to interfere with and intimidate Plaintiff on account of his having aided and encouraged his coworkers with disabilities regarding their rights under the ADA. 42 U.S.C. § 12203.

82.    Defendant's violations of the ADA caused Plaintiff to be terminated from his employment.

83.    Because of such conduct, the Plaintiff has suffered severe emotional distress, embarrassment, and humiliation.

84.    Defendant engaged in the practices complained of herein with malice and/or reckless indifference to Plaintiff's federally protected rights.

**B.    Count II -- Associational Discrimination**

85.    Plaintiff re-alleges and incorporates by reference paragraphs 1-84, above with the same force and effect as if fully set out in specific detail hereinbelow.

86.    Plaintiff James Hawthorne was associated with his co-workers at BAC, including specifically those co-workers at BAC who were and are persons with disabilities under the ADA.   See 42 U.S.C. 12102.

87.     Plaintiff was 'qualified' for his job as a custodian in accordance with 42 U.S.C. 12111(8).

88.     Defendant is covered entity and an employer in accordance with 42 U.S.C. 12111(5).

89.     Under the ADA, prohibited discrimination includes "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association."   42 U.S.C. 12112(b)(4).

90.     Defendant's actions, including its discipline, reduction in hours, suspension, and termination of Plaintiff, violated the ADA.

91.     As a proximate result, Plaintiff has suffered extreme harm including, but not limited to, loss of employment, denial of wages, compensation and other benefits and conditions of employment.

92.     Plaintiff has also suffered injury including, pain, humiliation, mental anguish, and suffering.

93.     Defendant has acted with malice and reckless disregard toward Plaintiff and his federally protected rights.

## VII.      PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court assume jurisdiction of this action and after trial:

1.      Issue a declaratory judgment that the employment policies, practices, procedures, conditions, and customs of Defendant violates the rights of Plaintiff secured by Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.

2.      Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys, and those acting in concert with Defendant and at Defendant's request from continuing to violate Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.

3.      Enter an Order requiring Defendant to make Plaintiff whole by reinstating him into the position he would have occupied in the absence of discrimination and retaliation, awarding him back-pay (plus interest), front pay, nominal damages, compensatory damages, punitive damages, and post judgment interest.

4.      Plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees, and expenses.

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.**

Respectfully submitted,

 */s/ Joshua R. Gale*
Joshua R. Gale, Esquire
Florida Bar No. 63283
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB LLC
101 N. Woodland Blvd. Suite 600
Deland, Florida 32720
Telephone: (386) 675-6946
Fax: (386) 675-6947
Email: jgale@wigginschilds.com

*Attorney for Plaintiff*

**OF COUNSEL**:
Rocco Calamusa (*to be admitted pro hac vice*)
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB LLC
The Kress Building
301 – 19th Street North
Birmingham, Alabama 35203
Telephone No.: (205) 314-0500
rcalamusa@wigginschilds.com

**DEFENDANT'S ADDRESS:**
**Brevard Achievement Center, Inc.**
**c/o Ryan R. Rogers, Reg. Agent**
**1845 Cogswell Street**
**Rockledge, FL 32955**